UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| REAL PROPERTY KNOWN AS | ) |
| 213 NORTH SEQUOIA BLVD, | ) |
| | ) |
| ONE HUNDRED FIFTY-TWO | ) |
| THOUSAND, NINE HUNDRED | ) |
| NINETY-SEVEN DOLLARS AND | ) |
| TWENTY-FOUR CENTS ($152,997.24) | ) |
| FROM FIRST COLLINSVILLE BANK, | ) |
| ACCOUNT # …3903, | ) |
| | ) |
| TWO THOUSAND DOLLARS ($2,000.00) | ) |
| FROM FIRST COLLINSVILLE BANK, | ) |
| ACCOUNT # …3904, | ) |
| | ) |
| ONE HUNDRED TEN THOUSAND, | ) |
| FIFTEEN DOLLARS AND | ) |
| TWENTY-TWO CENTS ($110,015.22) | ) |
| FROM EAGLE BANK & TRUST, | ) |
| ACCOUNT # …8589 | ) |
| | ) |
| SEVENTY-ONE THOUSAND, NINE | ) |
| HUNDRED THIRTY-ONE DOLLARS | ) |
| AND THIRTY-SIX CENTS ($71,931.36) | ) |
| FROM WELLS FARGO BANK, | ) |
| ACCOUNT # …2777, | ) |
| | ) |
| EIGHTY-FOUR THOUSAND, ONE | ) |
| HUNDRED THIRTY-FOUR DOLLARS | ) |
| AND  SEVENTY-FIVE CENTS | ) |
| ($84,134.75) FROM WELLS FARGO | ) |
| BANK, ACCOUNT # …2798, | ) |
| | ) |
| ONE 2010 NISSAN MURANO, | ) |
| VIN: JN8AZ1MW3AW120649, | ) |
| | ) |

ONE 2010 NISSAN ARMADA,  )
VIN: 5N1AA0NE5AN612202,   )
                         )
ONE 2011 NISSAN TITAN,   )
VIN: 1N6AA0EC6BN313898,  )
                         )
ONE 2012 NISSAN PATHFINDER, )
VIN: 5N1AR1NB3CC610211,  )
                         )
and                      )
                         )
ONE STOCK CERTIFICATE D-17, )
REPRESENTING 112,055 SHARES OF )
SERIES D STOCK IN APPISTRY, INC., )
ISSUED IN THE NAME OF MMVW AND )
FRIENDS, LLC,            )
                         )
   Defendants.           )

## **VERIFIED COMPLAINT FOR FORFEITURE**

COMES NOW Plaintiff the United States of America, by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Richard E. Finneran, Assistant United States Attorney for said district, and for its Verified Complaint for Forfeiture states as follows:

### *Nature of the Action*

1. This is a civil action *in rem* brought by the United States, pursuant to 18 U.S.C. § 981, seeking forfeiture of all right, title, and interest in the above-captioned defendant property, which is real and personal property traceable to proceeds of 18 U.S.C. §§ 1952 (use of facilities of interstate commerce in furtherance of illegal activity) and 1955 (illegal gambling business), and is property involved in unlawful monetary transactions in violation of 18 U.S.C. §§ 1956 and 1957. The defendant property also includes property that is traceable to the proceeds of a conspiracy to violate the foregoing statutes.

2. The defendant property includes the real property known as 213 North Sequoia Blvd, Florence, Alabama 35630, together with all appurtenance, improvements, and attachments thereon, bearing a legal description as "120 x 150 Lot The Cedars SD Lot 34 Florence", Parcel ID #15-07-35-1-005-024-000 (the "House").

3. The defendant property also includes approximately $152,997.24 in funds seized on or about April 1, 2014 from a First Collinsville Bank account ending in 3903 in the name of Joseph R. and Mary E. Mahfood, Revised Living Trust Dated 3/12/12, Joseph Raymond or Mary Ellen Mahfood, Trustees.

4. The defendant property also includes approximately $2,000.00 in funds seized on or about April 1, 2014 from a First Collinsville Bank account ending in 3904 in the name of Joseph R. and Mary E. Mahfood, Revised Living Trust Dated 3/12/12, Joseph Raymond or Mary Ellen Mahfood, Trustees.

5. The defendant property also includes approximately $110,015.22 in funds seized on or about April 1, 2014 from an Eagle Bank and Trust account ending in 8589 in the name of Joseph R. Mahfood and Mary E. Mahfood.

6. The defendant property also includes approximately $71,931.36 in funds seized on or about June 3, 2014 from a Wells Fargo Bank account ending in 2777 in the name of Joseph and Mary Mahfood, Revised Trust.

7. The defendant property also includes approximately $84,134.75 in funds seized on or about June 3, 2014 from a Wells Fargo Bank account ending in 2798 in the name of Joseph and Mary Mahfood, Revised Trust Managed (together with the defendant property described in paragraphs 3 through 6 above, the "Funds").

8. The defendant property also includes a 2010 Nissan Murano, VIN: 5N1AA0NE5AN612202, seized on or about April 2, 2014.

9. The defendant property also includes a 2010 Nissan Armada, VIN: 5N1AA0NE5AN612202, seized on or about April 2, 2014.

10. The defendant property also includes a 2012 Nissan Titan, VIN: 1N6AA0EC6BN313898, seized on or about April 3, 2014.

11. The defendant property also includes a 2012 Nissan Pathfinder, VIN: 5N1AR1NB3CC610211, seized on or about April 3, 2014.

12. The defendant property also includes one stock certificate D-17, representing 112,055 shares of Series D Preferred Stock in Appistry, Inc. issued in the name of MMVW and Friends, LLC (the "Stock").

### Jurisdiction and Venue

13. This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1331, 1345, and 1355 because this is a civil action arising under the laws of the United States, because it is a proceeding of forfeiture, and because it has been brought by the United States.

14. This Court has jurisdiction over the parties pursuant to 28 U.S.C. §§ 1345 and 1355 because this is a proceeding for forfeiture, and because it has been brought by the United States.

15. Venue is placed in the Eastern District of Missouri pursuant to 28 U.S.C. § 1355 because an act giving rise to the forfeiture occurred in the Eastern District of Missouri.

### Basis for Forfeiture

16. The defendant property is subject to forfeiture under 18 U.S.C. § 981(a)(1)(c) because it is real property constituting or derived from proceeds traceable to an offense constituting "specified unlawful activity" (as that term is defined in 18 U.S.C. § 1956(c)(7)), to wit, 18 U.S.C.

§§ 1952 (use of facilities of interstate commerce in furtherance of illegal activity) and 1955 (illegal gambling business) , as set forth in detail below.

17. The defendant property is also subject to forfeiture under 18 U.S.C. § 981(a)(1)(A) because it is property involved in a violation of 18 U.S.C. § 1956 and/or 18 U.S.C. § 1957, as set forth in detail below.

18. The defendant Funds are subject to forfeiture without regard to their traceability to criminal activity because they were contained in an account into which identical traceable property had been deposited and therefore may be forfeited as fungible property under Title 18, United States Code, Section 984.

### *Legal Background*

19. Section 981(a)(1)(C) of Title 18 provides that "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of [Title 18], or a conspiracy to commit such offense" is subject to forfeiture.

20. Section 1956(c)(7) of Title 18 defines "specified unlawful activity" to include "any act or activity constituting an offense listed in section 1961(1)" of Title 18, with certain exceptions inapplicable here.

21. Among the offenses listed in Section 1961(1) is "any act which is indictable under . . . section 1952 [or] section 1955."

22. Section 1952 of Title 18 provides that whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce with the intent to distribute the proceeds of any unlawful activity or otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of any unlawful activity

and thereafter performs an act to further those objectives shall be fined under that title or imprisoned for not more than five years, or both. "Unlawful activity" is defined to include "any business enterprise involving gambling . . . in violation of the State in which they are committed or of the United States" and "any act which is indictable under section 1956 or 1957" of Title 18.

23. Section 1955 of Title 18 provides that whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined under that title or imprisoned not more than five years, or both. "Illegal gambling business" is further defined to include any gambling business which is a violation of the law of a State or political subdivision in which it is conducted, involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business, and has been or remains in substantially continuous operation for a period in excess of 30 days or has a gross revenue of $2,000.00 in any single day. "Gambling" is further defined to include pool-selling, bookmaking, and conducting lotteries, bolita, or numbers games, or selling chances therein.

24. Gambling is a Missouri state crime under Missouri Revised Statute 572.20. Pursuant to the definition in Missouri Revised Statutes Section 572.010, a person commits the crime of gambling if he stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome.

25. Under Missouri Revised Statutes Section 572.030, a person commits the crime of promoting gambling in the first degree if he knowingly advances or profits from unlawful gambling by engaging in bookmaking to the extent that he receives or accepts in any one day more than one bet and a total of more than $100.00 in bets. "Bookmaking" is defined in Missouri Revised Statutes Section 527.010 to include "advancing gambling activity by unlawfully

accepting bets from members of the public as a business, rather than in a casual or personal fashion, upon the outcomes of future contingent events." Under that same subsection, a person "advances gambling activity" if, "acting other than as a player, he engages in conduct that materially aids any form of gambling activity."

26. Section 1956 of Title 18, United States Code provides that one commits the offense of money laundering if, knowing that the property involved in a financial transaction represents the proceeds of some illegal activity, conducts or attempts to conduct such a financial transaction with those funds either with the intent to promote the carrying on of a specified unlawful activity or with the knowledge that the transaction is designed in whole or in part to conceal or disguise the nature, source, location, ownership, or control of said proceeds.

27. Section 1957 of Title 18 provides that one also omits the offense of money laundering if he "knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000.00 and is derived from specified unlawful activity."

28. Section 981(a)(1)(A) of Title 18 provides that "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956 [or] 1957 . . . of [Title 18], or any property traceable to such property" is subject to forfeiture.

29. Section 1956(c)(7) of Title 18 defines "specified unlawful activity" to include "any act or activity constituting an offense listed in section 1961(1)" of Title 18, with certain exceptions inapplicable here.

30. Among the offenses listed in Section 1961(1) is "any act which is indictable under" section 1952 . . . section 1955 . . . section 1956 [or] section 1957."

31. Section 371 makes it a crime to conspire to commit an offense against the United States.

*Specified Unlawful Activity:*
*Use of Facilities of Interstate Commerce in Furtherance of*
*Illegal Activity and Operation of an Illegal Gambling Business*

32. At all times relative to this complaint, Samuel Douglas "Doug" Hazer ("Doug Hazer"), Carol Jean "CJ" Hazer ("CJ Hazer"), and Joseph "Joe" Mahfood ("Mahfood") operated and conspired to operate an extensive illegal gambling business in the Eastern District of Missouri and elsewhere that utilized facilities of interstate commerce, in violation of Title 18, United States Code, Sections 371, 1952, and 1955. The illegal gambling activity includes but is not limited to soliciting and accepting large bets on the prospective outcomes of various sporting events.

33. The illegal gambling business involved the use of the facilities of interstate commerce, including but not limited to wires, telephones, and the Internet.

34. The illegal gambling business involved at least five participants.

35. The illegal gambling business operated in excess of 30 days.

36. The illegal gambling business had gross revenue of at least $2,000.00 on at least one single day.

37. The illegal gambling business was conducted in violation of the laws of the state of Missouri, including Missouri Revised Statutes Sections 572.10, 572.20, and 572.30.

38. From January 2012 through August 2014, Doug Hazer received at least $380,000.00 in cash that cannot be traced to any legitimate activity and which constitutes the proceeds of the illegal gambling business and conspiracy.

39. From January 2009 through January 2014, CJ Hazer received at least $124,000.00 in cash that cannot be traced to any legitimate activity and which constitutes the proceeds of the illegal gambling business and conspiracy.

40. From January 2008 through February 2014, Joseph Mahfood received at least $490,898.19 in cash that cannot be traced to any legitimate activity and which constitutes the proceeds of the illegal gambling business and conspiracy.

41. During those same time periods, numerous checks were deposited into Mahfood's and CJ Hazer's accounts that represented payment of gambling debts and which constitute the proceeds of the illegal gambling business and conspiracy.

42. Doug Hazer, CJ Hazer, and Joseph Mahfood laundered and conspired to launder the proceeds of the illegal gambling business and conspiracy in various ways. By way of example and not by way of limitation, Mahfood would provide cash to businesses in exchange for paychecks for services that would not in fact be rendered in order to disguise the nature and source of his income. Mahfood would also purchase sporting event tickets using credit cards and then pay down the credit cards using money orders purchased with the proceeds of the illegal gambling business. Likewise, CJ Hazer would disguise payments relating to the illegal gambling business as payments from her business, Computer EZ. Each of these methods, among others, were employed intentionally and knowingly in order to conceal and disguise the nature, location, source, ownership, or control of the proceeds of the illegal gambling business and/or to promote the carrying on of the illegal gambling business, and were employed with knowledge that the property involved in the financial transaction represented the proceeds of unlawful activity.

### *Unlawful Monetary Transactions: The Purchase of the Defendant House*

43. On or about April 9, 2014, Doug Hazer purchased a Regions Bank cashier's check in the amount of approximately $40,000.00, payable to Alliance Title & Escrow, Remitter: Samuel Hazer (the "First Check").

44. The First Check was funded by cash withdrawn from Doug Hazer's Regions Bank account in the amount of approximately $40,008.00 on or about April 9, 2014.

45. Employing a "last-in, first-out" method of accounting, the source of funds in Doug Hazer's Region's Bank account used to purchase the Cashier's Check consisted of nine cash deposits which were made from March 3, 2014 to April 7, 2014, totaling approximately $29,200.00. The remaining approximately $10,808.00 used to purchase the Cashier's Check consisted of a check, which was deposited on February 28, 2014 for approximately $25,000.00 from Computer EZ, bearing the memo line "Consulting."

46. Computer EZ is a fictitious business registration for CJ Hazer, who is Doug Hazer's ex-wife. The business was first registered by CJ Hazer on or about August 25, 1997. The registration expired on or about October 16, 2009 and was not registered again until on or about October 26, 2014, months after the aforementioned check was issued.

47. Again employing a "last-in, first-out" method of accounting, the funds supporting the check from Computer EZ were funded by a check deposited to Computer EZ's Midwest Bank Centre account on or about February 11, 2014 in the amount of approximately $16,738.00, a check deposited on or about February 7, 2014 in the amount of approximately $554.00, and a check deposited on or about January 21, 2014 in the amount of $11,875.00. Each of these checks constituted the payment of a gambling debt owed to the illegal gambling business.

48. The remainder of the cash withdrawn from Doug Hazer's Regions Bank account was funded by cash deposits to that account.

49. On May 1, 2014, Jessica Hazer purchased a cashier's check from The First, a National Banking Association, in the amount of approximately $151,995.02, payable to Alliance Title & Escrow, Remitter: Jessica Hazer (the "Second Check").

50. Doug and Jessica Hazer are, and were at all times between April 1, 2014 and May 5, 2014, husband and wife.

51. The Second Check was funded by funds supporting an approximately $49,950.00 check dated April 24, 2014 from Morgan Stanley to one Jo Ann Antalick, who is Doug Hazer's sister.

52. The Morgan Stanley check was endorsed "JoAnn Antalick pay to the order of Samuel Douglas Hazer" and then signed "Samuel Douglas Hazer."

53. The remaining portion of the funds supporting the Second Check was funded with approximately $102,046.00 in cash.

54. On April 30, 2014, Wells Fargo Bank issued a cashier's check for approximately $32,000.00, payable to Alliance Title & Escrow (the "Third Check").

55. On May 5, 2014, the First Check, the Second Check, and the Third Check were provided to Alliance Title & Escrow at the closing to fund the purchase of the House.

56. The funds used to purchase the defendant House included proceeds of the above described illegal gambling business and conspiracy and/or property involved in money laundering.

### *The Funds in First Collinsville Bank Account Ending in 3903*

57. The funds deposited into the First Collinsville Bank Account ending in 3903 include at least $152,997.24 in deposits that are traceable to the payment of gambling debts relating to the

above-described illegal gambling business and conspiracy or to funds laundered in connection with those proceeds.

58. Those funds were also commingled with other funds whose source is not known in order to conceal the nature, location, source, ownership, and control of the illegal proceeds described above.

### *The Funds in First Collinsville Bank Account Ending in 3904*

59. The funds deposited into the First Collinsville Bank Account ending in 3904 include at least $2,000.00 in deposits that are traceable to the payment of gambling debts relating to the above-described illegal gambling business and conspiracy or to funds laundered in connection with those proceeds.

60. Those funds were also commingled with other funds whose source is not known in order to conceal the nature, location, source, ownership, and control of the illegal proceeds described above.

### *The Funds in Eagle Bank Account Ending in 8589*

61. The funds deposited into the Eagle Bank account ending in 8589 include at least $110,015.22 in deposits that are traceable to the payment of gambling debts relating to the above-described illegal gambling business and conspiracy or to funds laundered in connection with those proceeds.

62. Those funds were also commingled with other funds whose source is not known in order to conceal the nature, location, source, ownership, and control of the illegal proceeds described above.

### *The Funds in Wells Fargo Account Ending in 2777*

63. The funds deposited into the Wells Fargo account ending in 2777 include at least

$71,931.36 in deposits that are traceable to the payment of gambling debts relating to the above-described illegal gambling business and conspiracy or to funds laundered in connection with those proceeds.

64. Those funds were also commingled with other funds whose source is not known in order to conceal the nature, location, source, ownership, and control of the illegal proceeds described above.

### The Funds in Wells Fargo Account Ending in 2798

65. The funds deposited into the Wells Fargo account ending in 2798 include at least $84,134.75 in deposits that are traceable to the payment of gambling debts relating to the above-described illegal gambling business and conspiracy or to funds laundered in connection with those proceeds.

66. Those funds were also commingled with other funds whose source is not known in order to conceal the nature, location, source, ownership, and control of the illegal proceeds described above.

### The 2010 Nissan Armada

67. On July 2, 2009, Mahfood purchased a 2008 Ford Expedition LTD with VIN: 1FMFU20598LA82970.

68. Mahfood wrote a check drawn on Eagle Bank and Trust ending in 8589 in the amount of approximately $39,700.00 payable to Suntrup Ford to purchase the vehicle. This check was funded by proceeds of the foregoing illegal gambling business and conspiracy, or by property involved in laundering the proceeds of that business and conspiracy.

69. On February 26, 2010, Mahfood signed a Retail Installment Contract and Security Agreement to purchase a 2010 Nissan Armada Platinum 4x4, VIN: 5N1AAONE5AN612202, for

approximately $48,747.00 from West County Nissan.

70. Mahfood traded in the 2008 Ford Expedition discussed above to make that purchase and received a trade-in allowance of approximately $29,500.00.

71. As such, the 2010 Nissan Armada is traceable to the proceeds of the illegal gambling business and conspiracy and funds laundered in connection with that business and conspiracy, and also itself constitutes property involved in money laundering.

### The 2010 Nissan Murano

72. On June 7, 2010, Mahfood signed a Retail Installment Contract to purchase a 2010 Nissan Murano AWD, VIN: JN8AZ1MW3AW120649, for approximately $38,014.00 from West County Nissan.

73. Mahfood traded in a 2007 Hyundai Entourage and received a Trade-In Allowance of approximately $11,500.00. Mahfood financed approximately $28,623.00 over 60 months, with monthly payments of approximately $488.21.

74. On January 19, 2011, Mahfood wrote a check number 1031 drawn on the First Collinsville Bank account ending in 3903 in the amount of approximately $14,000.00 in partial satisfaction of that loan. This check was funded by proceeds of the foregoing illegal gambling business and conspiracy, or by property involved in laundering the proceeds of that business and conspiracy.

75. Mahfood made additional payments with cashier's checks and money orders and ultimately paid off the loan on September 8, 2011 with a check drawn on the First Collinsville Bank account ending in 3903 in the amount of approximately $2,343.20. This check was funded by proceeds of the foregoing illegal gambling business and conspiracy, or by property involved in laundering the proceeds of that business and conspiracy.

76. As such, the 2010 Nissan Armada is traceable to the proceeds of the illegal gambling business and conspiracy and funds laundered in connection with that business and conspiracy, and also itself constitutes property involved in money laundering.

### *The 2011 Nissan Titan*

77. On or about September 23, 2011, Joseph R. and William R. Mahfood signed a Retail Installment Contract and Security Agreement to purchase a 2011 Nissan Titan Crew Cab, VIN: 1N6AAOEC6BN313898, from West County Nissan for approximately $38,673.00.

78. The Mahfoods traded in a 2006 Ford Expedition and received a trade-in allowance of approximately $10,500.00.

79. The Mahfoods financed approximately $27,865.00 over 60 months with monthly payments of approximately $511.46.

80. On or about December 10, 2012, Mahfood wrote a check drawn on the First Collinsville Bank account ending in 3903 in the amount of approximately $21,852.07 payable to PNC Bank to pay off this loan. This check was funded by proceeds of the foregoing illegal gambling business and conspiracy, or by property involved in laundering the proceeds of that business and conspiracy.

81. As such, the 2011 Nissan Titan is traceable to the proceeds of the illegal gambling business and conspiracy and funds laundered in connection with that business and conspiracy, and also itself constitutes property involved in money laundering.

### *The 2012 Nissan Pathfinder*

82. On or about January 13, 2012, a vehicle with VIN: 5N1AR1NB3CC610211 was purchased, and the lienholder was PNC Bank, 2730 Liberty Ave, Pittsburgh, PA 15222.

83. On or about January 18, 2012, Mahfood wrote a check drawn on the First

Collinsville Bank account ending in 3903 in the amount of approximately $20,000.00 payable to West County Nissan to pay off this loan. This check was funded by proceeds of the foregoing illegal gambling business and conspiracy, or by property involved in laundering the proceeds of that business and conspiracy.

84.     As such, the 2012 Nissan Pathfinder is traceable to the proceeds of the illegal gambling business and conspiracy and funds laundered in connection with that business and conspiracy, and also itself constitutes property involved in money laundering.

### The Stock

85. On May 10, 2011, Mary Ellen Mahfood signed an Investor Agreement with Appistry, Inc. ("Appistry").

86. Mary Ellen Mahfood loaned approximately $100,000.00 to Appistry pursuant to a Convertible Promissory Note (the "Note"), by making a check in the amount of approximately $100,000.00 payable to Appistry. The check was drawn on Mahfood's First Collinsville Bank account ending in 3903 and was funded by proceeds of the foregoing illegal gambling business and conspiracy, or by property involved in laundering the proceeds of that business and conspiracy.

87. On or about July 15, 2011, Mary Ellen Mahfood signed an Assignment and Assumption of Loan Documents that assigned the Note to St. Raphael the Archangel, LLC ("St. Raphael"), of which Mary Ellen Mahfood was a member.

88. On or about that same date, a Conversion and Discharge Agreement was entered into between Appistry and St. Raphael, whereby the Note was converted, along with other notes, into a total of approximately 727,652 shares of Series D Preferred Stock in Appistry.

89. On or about May 23, 2013, Mary Ellen Mahfood executed a "Membership Interest Redemption Agreement" with St. Raphael, whereby Mary Ellen Mahfood redeemed her interest in

St. Raphael in exchange for 112,055 shares of Series D Participating Convertible Preferred Shares of Appistry, Inc.

90. Two days earlier, on or about May 21, 2013, Mary Ellen Mahfood signed an Operating Agreement of MMVW and Friends, LLC, 5002 Southridge Park Drive, St. Louis, Missouri 63129. Appistry emails stated in part "Joe Mahfood's group which is investing under the MMVW and Friends, LLC."

91. Schedule A to this Agreement listed a balance in the capital account of Mary Ellen Mahfood of approximately $100,850.00.

92. On or about June 3, 2013, a representative of Appistry sent a letter to an attorney at Greensfelder, Hemker and Gale P.C. The letter indicated that "Mary Ellen Mahfood has withdrawn her interest in St. Raphael the Archangel, LLC. She has requested that the Appistry Series D shares that represent her interest in the St. Raphael the Archangel LLC be retitled in the name of MMVW and Friends LLC." The letter further requested, on behalf of the members of St. Raphael, that St. Raphael's certificate for approximately 727,652 shares of Appistry stock be cancelled and that two new certificates be issued: one for approximately 615,597 shares in the name of St. Raphael, and a second for approximately 112,055 shares in the name of MMVW and Friends, LLC.

93. On June 10, 2013, Appistry issued one stock certificate, #D-17, representing approximately 112,500 shares of Series D Preferred Stock in Appistry, in the name of MMVW and Friends, LLC.

94. As such, the Stock is traceable to the proceeds of the illegal gambling business and funds laundered in connection with that business, and also itself constitutes property involved in money laundering.

### *Count I – Forfeiture as Proceeds of Illegal Gambling Business*
### *(Against All Defendants)*

95. Each of the foregoing allegations is hereby incorporated by reference as if fully set forth herein.

96. The defendant property is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) because it constitutes or is derived from proceeds traceable to the above described illegal gambling business and conspiracy in violation of 18 U.S.C. §§ 371, 1952, 1955, 1956 and 1957.

WHEREFORE the United States prays that this Court decree that all right, title, and interest in the defendant property be condemned and forfeited to the United States of America, and for such other and further relief as the Court deems just and proper.

### *Count II – Forfeiture as Property Involved in Money Laundering*
### *(Against All Defendants)*

97. Each of the foregoing allegations is hereby incorporated by reference as if fully set forth herein.

98. The defendant property is subject to forfeiture under 18 U.S.C. § 981(a)(1)(A) because it is property traceable to property involved in money laundering in violation of 18 U.S.C. §§ 1956 and 1957.

WHEREFORE the United States prays that this Court decree that all right, title, and interest in the defendant property be condemned and forfeited to the United States of America, and for such other and further relief as the Court deems just and proper.

Dated: December 11, 2015

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN, #60768
Assistant United States Attorney
111 South 10th Street, Suite 20.333
Saint Louis, Missouri 63102
Telephone:   (314) 539-2200
Facsimile:    (314) 539-2287
*richard.finneran@usdoj.gov*

## VERIFICATION

I, Ankur A. Patel, hereby verify and declare under penalty of perjury that I am a Special Agent with the Federal Bureau of Investigation, that I have read the foregoing Verified Complaint and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: __12/11/2015__
                       (date)

_____
Ankur A. Patel
Special Agent
Federal Bureau of Investigation